**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

GEORGE STEPHEN NATT,        )
        Plaintiff,        )
                  )
        v.        )        CAUSE NO.: 2:14-CV-81-JEM
                  )
CAROLYN W. COLVIN, Acting     )
Commissioner of the Social Security   )
Administration,        )
        Defendant.      )

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by George Stephen Natt on March 14, 2014, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 14], filed by Plaintiff on July 11, 2014. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On October 17, 2014, the Commissioner filed a response, and on November 7, 2014, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

On February 4, 2011, Plaintiff filed an application for disability insurance benefits ("DIB") with the U.S. Social Security Administration ("SSA") alleging that he became disabled on June 1, 2005. Plaintiff's application was denied initially and upon reconsideration. On November 9, 2012, Administrative Law Judge ("ALJ") William E. Sampson held a hearing at which Plaintiff, with an attorney, and a Vocational Expert ("VE") testified. On December 10, 2013, the ALJ issued a decision finding Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2008.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of June 1, 2005, through his date last insured of December 31, 2008 (20 CFR 404.1571 et seq.).

3. Through the date insured, the claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spines, bilateral rotator cuff tears, status post bilateral rotator cuff surgeries, kidney stones, congenital short bowel syndrome with malabsorption, osteoarthritis, osteoporosis, a sacral lesion, diabetes, hearing loss, vertigo, and obesity. (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the ALJ found that through the date last insured the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), which includes the ability to lift and/or carry and push and/or pull up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk six hours in an eight hour workday, and sit six hours in an eight hour workday. He could occasionally balance. The claimant could occasionally reach overhead bilaterally. He could occasionally operate foot controls. The claimant had to avoid concentrated exposure to excessive noise.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was 60 years old, which is defined as an individual closely approaching retirement age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), and 404.1568(d)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 1, 2005, the alleged onset date, through December 31, 2008, the date last insured (20 CFR 404.1520(g)).

The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on January 8, 2014. *See* 20 C.F.R. § 404.981. Under 42 U.S.C. § 405(g), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision. The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

Plaintiff was 62 years old when he applied for DIB and 60 years old on his date last insured. Plaintiff suffers from degenerative disc disease, bilateral rotator cuff tears, status post bilateral rotator cuff surgeries, kidney stones, congenital short bowel syndrome with malabsorption, osteoarthritis, osteoporosis, a sacral lesion, diabetes, hearing loss, vertigo, obesity, cataracts, hemorrhoids, enlarged prostate, posttraumatic stress disorder (PTSD), depression, and obstructive sleep apnea. Plaintiff had a total of three rotator cuff surgeries in 2001, 2005 and 2006.

In August 2010, Plaintiff's physician Kimberly Ricaurte, M.D., opined that Plaintiff was limited to desk work. Dr. Ricaurte also noted that Plaintiff's ability to walk had decreased from two years prior, when he could walk two blocks. Also in August 2010, Plaintiff's psychiatrist, Amin Daghestani, M.D., opined that he was unable to work due to PTSD related to his service in Vietnam.

3

In October 2011, Plaintiff's occupational therapist Paige Shafer, M.S., conducted an assessment concluding that Plaintiff had deficits with occasionally lifting with two hands, in squatting, in kneeling, in crawling, and had moderate difficultly with prolonged standing, and walked with an increased antalgic gait. A total of four medical and psychiatric state reviews of Plaintiff's medical records found insufficient evidence to determine that Plaintiff was disabled as of the date last insured.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*,

705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. § 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functioning capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite

[his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996

WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be

based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R.

§ 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the

burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309,

313 (7th Cir. 1995).

## ANALYSIS

### A.      Residual Functional Capacity

Plaintiff argues that the RFC is not based on substantial evidence. The Commissioner argues

that the ALJ supported his RFC finding with substantial evidence.

The RFC is an assessment of what work-related activities the claimant can perform despite

his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §

404.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all

of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §

404.1545(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing
> how the evidence supports each conclusion, citing specific medical
> facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily
> activities, observations). In assessing RFC, the adjudicator must
> discuss the individual's ability to perform sustained work activities
> in an ordinary work setting on a regular and continuing basis (i.e., 8
> hours a day, for 5 days a week, or an equivalent work schedule), and
> describe the maximum amount of each work-related activity the
> individual can perform based on the evidence available in the case
> record. The adjudicator must also explain how any material
> inconsistencies or ambiguities in the evidence in the case record were
> considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, he must

consider all of the evidence that is relevant to the disability determination and provide enough

analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362

F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence

to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir.

2002)).

The ALJ rejected the opinions of the three treating physicians. "A treating physician's

opinion regarding the nature and severity of a medical condition is entitled to controlling weight if

it is well supported by medical findings and not inconsistent with other substantial evidence in the

record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*,

496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that opinion be

supported directly by all of the other evidence "as long as there is no other substantial evidence in

the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188 at *3.

To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Clifford v. Apfel*, 227 F.3d 863, 870 (citing

*Richardson v. Perales*, 402 U.S. 389 (1971)); *see also Schmidt v. Barnhart*, 395 F.3d 737, 744.

If the ALJ declines to give a treating source's opinion controlling weight, he must still

determine what weight to give it according to the following factors: the length, nature, and extent

of the physician's treatment relationship with the claimant; whether the physician's opinions were

sufficiently supported; how consistent the opinion is with the record as a whole; whether the

physician specializes in the medical conditions at issue; and other factors, such as the amount of

understanding of the disability programs and their evidentiary requirements or the extent to which

an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §

404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' [the] reasons." *Elder*, 529 F.3d at 415 (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision."); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). ("An ALJ thus may discount a treating physician's medical opinion if it . . . 'is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.'") (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).

Kimberly Ricaurte, M.D., and Keith Reich, D.O., in August 2010 and October 2011, respectively, separately opined that Plaintiff was limited to sedentary work due to his physical impairments. The ALJ gave these opinions "little evidentiary weight based on the totality of the evidence" and the length of time between the opinions and the last date insured (one and a half years for Dr. Ricaurte's opinion and three years for Dr. Reich's opinion). AR 26. The ALJ also gave little weight the opinion provided by Amin Daghestani, M.D., that Plaintiff's PTSD from military service made him unable to work, because it was written year and a half after Plaintiff's last date last insured.

The ALJ did not address the factors enumerated in 20 C.F.R. § 404.1527(c) as they applied to the treating physicians, but merely cites hundreds of pages of medical documentation, apparently indicating medical evidence contrary to the treating physicians' findings. However, the evidence that the ALJ cites does not support the rejection of the doctors' opinions. For instance, the ALJ stated

the "claimant was consistently found to have no clubbing, cyanosis, or edema in his extremities," AR 24, but does not explain how lack of changes to the toenails and fingernails (clubbing), lack of blue coloring to the skin from lack of oxygen (cyanosis), or lack of swelling caused by fluid in tissue (edema) related to any of the physicians' opinions. In another example, the ALJ cites a doctor's notation that Plaintiff was found to have nearly full strength in his right rotator cuff and full strength in his left rotator cuff, but fails to include the other part of that notes recommending physical therapy for Plaintiff and mentioning that if it was unhelpful then Plaintiff may need another surgery to his rotator cuff. AR 482. As a result, the notation of Plaintiff's strength does not appear to actually represent fully operating rotator cuffs as the ALJ implies. The Court also notes that many, if it not all, of Plaintiff's impairments pre-date these opinions as well as the date last insured, so it is not apparent to the Court why the opinions should be instantly discounted based on their timing since they reflect limitations that span several years.

The ALJ also rejected the opinion of licensed occupational therapist, Paige Shafer, M.S., because she was "not an 'acceptable medical source'" and her opinion was three years after the date last insured. Although Ms. Shafer is not an "acceptable medical source" whose opinion would be entitled to controlling weight, 20 CFR § 416.927, an ALJ must consider "all relevant evidence in an individual's case record," including opinions "from medical sources who are not 'acceptable medical sources,'" SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006), and must apply the same criteria to determine the weight given their opinions as is applied to the opinions of "acceptable medical sources." *Id*. at *4-5, *see also Phillips v. Astrue,* 413 Fed. App'x. 878, 884 (7th Cir. 2010) ("In deciding how much weight to give to opinions from these 'other medical sources,' an ALJ should apply the same criteria listed in § 404.1527(d)(2).").

It is not only the rejection of these reports, but the evidentiary deficit created by the rejection of all treating source opinions that most concerns the Court. The ALJ gave limited weight to all the reports and even the trained medical professionals from the state agencies determined there was insufficient evidence to determine Plaintiff's RFC prior to his date last insured. Although the ALJ lists a litany of medical visits, tests, and other medical evidence, there is no explanation as to how any of these were incorporated into the RFC, nor what medical evidence the ALJ made the basis of the RFC finding. *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) ("[I]t is the evidentiary deficit left by the ALJ's rejection of his reports—not the decision itself—that is troubling. The rest of the record simply does not support the parameters included in the ALJ's residual functional capacity determination, such as an ability to "stand or walk for six hours" in a typical work day . . ."); *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("[T]he ALJ did not explain how he arrived at these conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision."); *Barrett v. Barnhart*, 355 F.3d 1065 (7th Cir. 2004) (finding reversible error when ALJ determined that claimant could stand for two hours because there was no medical evidence to support such a conclusion). The ALJ must build an "accurate and logical bridge from the evidence to [his] conclusion" *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir.2000) and "he may not 'play doctor' by using his own lay opinions to fill evidentiary gaps in the record." *Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012).

The ALJ failed to build a logical bridge and impermissibly filled in the evidentiary gaps with his own medical determinations when developing Plaintiff's RFC. The Court remands for a new RFC that fully considers the treating physicians' opinions and provides a clear analysis of the weight given to the treating physicians' opinions. The Court reminds the ALJ that he may recontact

11

physicians, for clarification, such as inquiring into the dates the opined limitations were in effect. *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) ("[T]he ALJ must consider the [medical] opinion and should recontact the doctor for clarification if necessary.") (citing S.S.R. 96-5p).

**B.      Credibility**

Plaintiff argues that the ALJ improperly assessed the credibility of Plaintiff and Plaintiff's wife. The Commissioner argues that the ALJ reasonably supported and articulated his credibility findings.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve []pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain
> or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated

by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

The ALJ found that "the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 24. Regarding this boilerplate language, the Seventh Circuit Court of Appeals has noted

> that the assessment of a claimant's ability to work will often . . . depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of [his] symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards . . . Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be.

*Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012). Since there is no separate credibility determination, it appears that the ALJ intends on the same extensive list of medical exams he cites to for the RFC to act as the basis for his credibility determination without any context or explanations. To the extent the unexplained and out of context listing of certain medical findings is intended to be a basis to find Plaintiff less than credible, many of the cited exams actually support Plaintiff's testimony. As examples, the ALJ cites to Plaintiff's multiple rotator cuff surgeries, osteoporosis diagnosis, CT scans showing lumbar spine issues, multiple kidney stone issues, short bowel syndrome with malabsorption diagnosis, and frequent complaints of neck and back pain to doctors, among others. AR 24. It is not clear to the Court what, if any of this, conflicts with Plaintiff's testimony that he had back pain, difficulty walking, difficulty sitting, shoulder pain and

issues with lifting. Not only does this fail to create a "logical bridge" from the evidence to the ALJ's conclusion, it also leaves the ALJ opinion without any actual credibility determination besides his boilerplate phrase, which is not sufficient. *Bjornson*, 671 F.3d 640, 645 (7th Cir. 2012) ("Such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."); *see also Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir.2011)*; Parker v. Astrue*, 597 F.3d 920, *as amended on reh'g in part* (May 12, 2010); *Martinez v. Astrue*, 630 F.3d 693, 696-97 (7th Cir.2011); *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir.2010).

Accordingly, the Court remands for a new credibility determination for Plaintiff's testimony. The ALJ is reminded to clearly separate his credibility determination and not rely on boilerplate language in the analysis.

Plaintiff's wife also provided a Third Party Function Report, which the ALJ accepted "[t]o the extent these statements . . . show the claimant was not disabled." AR 25. The ALJ apparently based his limited acceptance of Plaintiff's wife's report on the (nearly non-existent) analysis for Plaintiff's credibility and her "obvious bias in seeing her husband obtain cash benefits." AR 26. As discussed above, Plaintiff's credibility analysis, or lack thereof, does not support the ALJ's circular determination to accept only the statements that do not support disability. Further, the ALJ should not simply reject Plaintiff's witness because of potential bias. *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) (Rejecting "[t]he implication is that if a plaintiff or a defendant (or a relative of either or a fiancé) testifies in a case, the testimony must automatically be discounted for bias. . . The administrative law judge should have made clear whether he believed the fiancé's testimony or not, or which part he believed, or whether he had no idea how much of what she said was worthy of

14

belief.")

The Court suggests that on remand the ALJ provide a full analysis of Plaintiff's wife's credibility in accordance with SSR 06-03p.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 14] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 27th day of March, 2015.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record